UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin J. Rodriguez Olan, being duly sworn, do hereby depose and state the following:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed since July 07, 2010. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into the United States. I attended the Federal Law Enforcement Training Center in Artesia, New Mexico, where I received training for the purpose of performing my duties as a Border Patrol, which includes training in immigration related law and matters. In addition, receive continuing education to maintain my skills related to Border Patrol work.

2. Investigation reveals that, on Thursday, January 02, 2025, **SANTO TOMAS JAIME** attempted to illegally re-enter the United States at or near Cabo Rojo, Puerto Rico. Therefore, this Affidavit is made in support of a Criminal Complaint against **JAIME** based on violation of Title 8, *United States Code*, Section 1326 (a) & (b)(2), attempting to re-enter the United States after having been previously removed following a conviction of an aggravated felony.

3. I am making this affidavit based on my own personal knowledge and the oral and written reports of other federal, state, and/or local law enforcement officials and agents who have investigated this matter. This affidavit does not contain all the information derived from this investigation, but only that which is sufficient to establish probable cause to believe that a crime has been committed.

## PROBABLE CAUSE

1

4. On January 2, 2025, at approximately 9:30 PM (AST), U.S. Coast Guard (USCG) Sector San Juan reported that a vessel was intercepted by USCG Cutter Hernandez approximately 21 nautical miles (NM) West of Cabo Rojo, Puerto Rico, with 43 subjects aboard.

5. All subjects were safely transferred to USCG cutter, for safety of lives at sea (SOLAS). Upon transfer to USCG, all subjects claimed to be undocumented migrants from Dominican Republic and Haiti.

6. At the USCG Cutter, the fingerprints of all subjects were entered into the biometrics system. Subsequent biometric verifications indicated that **JAIME** had a history of both prior immigration and criminal activity.

7. On January 04, 2025, at approximately 12:15 p.m., **JAIME** was arrested at the Mayagüez Port of Entry in Mayagüez, Puerto Rico and subsequently transported to the Ramey Border Patrol Station for further investigation, processing, and removal proceedings.

8. As to **JAIME**'s immigration and criminal history:

   a) On March 15, 2003, **JAIME** was encountered and arrested by Border Patrol during a routine bus traffic check in Ft. Lauderdale, Florida.

   b) May 23, 2003, the subject was released from immigration custody on the condition that they post a surety bond.

   c) On October 24, 2003, an Immigration Judge ordered the removal of **JAIME**.

   d) **JAIME** failed to depart the United States as ordered.

   e) On or about June 22, 2006, **JAIME** was apprehended by Immigration Officers in the state of Delaware.

   f) On September 20, 2006, **JAIME** was officially removed from the United

States to Dominican Republic.

g) On July 2, 2013, **JAIME** was encountered by Immigration and Customs Enforcement (ICE) officers at the JAXPORT Marine Terminal in Florida on July 2, 2013, after arriving in the country illegally from the Dominican Republic.

h) On September 23, 2013, **Jaime** was convicted in the United States Court for the District of Puerto Rico under the provisions of 8 U.S.C. § 1326(a), which pertains to the offense of unlawful presence in the United States after prior deportation or removal. **JAIME** was sentence to Time Served Plus (7) Days.

i) On November 30, 2016, Jaime was apprehended by Delaware State Police detectives and formally charged with possession of a controlled substance with intent to distribute, a charge that included aggravating factors. He was convicted and sentenced to 15 years' imprisonment. Subsequently, the sentence was suspended for a period of 120 days.

j) On April 04, 2017, **JAIME** was officially removed from the United States to Dominican Republic.

9. On Thursday, January 2, 2025, **JAIME** re-entered the United States at a place other than a designated Port of Entry.

10. **JAIME** does not have any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, **JAIME** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

11. **JAIME** does not have any petitions pending with the Bureau of Citizenship and Immigration Services.

12. On January 2, 2025, Border Patrol Agents advised **JAIME** of his right to speak with the Consul of his native country, the Dominican Republic, to which he declined.

13. Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, as well as the facts revealed in this investigation, I conclude that there is sufficient probable cause to demonstrate the commission of a violation of federal law by the aforementioned subject., to wit, a violation of for Title 8, *United States Code*, Section 1326 (a) & (b)(2).

_____
Kevin J. Rodriguez Olan
Border Patrol Agent

Subscribed and sworn before me pursuant to FRCP 4.1 at 2:15 p.m. by telephone, this 6th day of January 2025.

Hon. Bruce J. McGiverin
**Bruce J. McGiverin**
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO